```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MARK C. ZAWKO,

                    Plaintiff,              05-CV-6007T

v.                                          DECISION
                                            and ORDER
JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____
```

INTRODUCTION

Plaintiff, Mark Zawko ("plaintiff" or "Zawko"), filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision by the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI"). On October 10, 2005, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Commissioner moved for judgment on the pleadings affirming her final decision that the plaintiff is not eligible for SSI.

For the reasons that follow, this Court finds that substantial evidence supports the Commissioner's decision that plaintiff is not eligible for SSI. Accordingly, defendants' motion for judgment on the pleadings is granted.

---

PROCEDURAL HISTORY

The plaintiff previously filed an application for disability insurance benefits alleging disability as of September 2, 1992. (T. 14).[1] That claim was denied through the hearing level by an Administrative Law Judge ("ALJ") decision dated May 16, 1997. Id. The plaintiff did not appeal that decision to the federal district court so it became final. ALJ Jasper Bede, the assigned ALJ in this case found no basis under 20 §§ C.F.R. 404.988 and 404.989 to reopen the May 16, 1997 decision. Id.

The plaintiff filed this application for SSI on February 19, 2003 alleging his disability since April 1, 2002, due to a back condition and a seizure disorder. (T. 46-48, 66). This application was denied on August 12, 2003. (T. 36-39). The plaintiff then requested a hearing before an ALJ. (T. 40-42). On June 17, 2004, a hearing was held before ALJ Bede at which Karen Kane, an impartial vocational expert, appeared and testified. (T. 259-92). The ALJ considering the case *de novo* found that the plaintiff was not disabled. (T. 11-20). On August 18, 2004, the plaintiff requested that the Appeals Council review ALJ Bede's decision. (T. 9-10). On November 5, 2004, the Appeals Council denied the plaintiff's

---

[1]   All citations "T" refer to the Transcript of the Administrative Record submitted to the Court as part of defendant's Answer, which include, *inter alia*, plaintiff's medical records, transcripts of the hearing before the ALJ and copies of the ALJ's decision denying plaintiff SSI benefits.

request for review, and thus, the decision of ALJ Bede became the final decision of the Commissioner. (T. 4-8).

BACKGROUND

A. Medical and Chiropractic Evidence

On September 2, 1992, the plaintiff strained his lower back in a work-related accident from which he developed back and leg pain. (T. 119, 147, 166, 233).

On September 29, 1993, a magnetic resonance imaging scan ("MRI") revealed that the plaintiff's thoracic spine was normal. (T. 106). An MRI of his lumbar spine had degenerative changes of the L4-5 and L-S1, but no evidence of disc herniation, spinal stenosis, or neoplasm. Id.

On August 16, 1995, the plaintiff saw Dr. Tally Parker complaining of chest pains and arm numbness. (T. 130). Dr. Parker diagnosed him with a seizure disorder and back pain. Id.

On April 24, 1996, the plaintiff saw a neurologist, Dr. Paul Buckthal. (T. 119-120). The plaintiff told Dr. Buckthal that his last seizure was four-and-a-half years ago and was brought on because he was drinking and missed a dosage of his medication. (T. 119). The plaintiff maintained that he had never had a seizure that was not associated with alcohol. Id. The plaintiff complained of lower back pain, however, his neurological exam was normal. Id. The doctor diagnosed the plaintiff with a history of a seizure disorder. Id.  Dr. Buckthal also noted that the plaintiff's

3

electroencephalogram ("EEG"), taken on April 29, 1996 was normal. Id.

On July 10, 1996, Dr. Parker noted that Dr. Kung, the plaintiff's workers' compensation doctor, observed normal neurological findings while Dr. Mennes another physician observed that the plaintiff's problems were pyschosomatic. (T. 127).

On September 16, 1996, an MRI of the plaintiff's cervical spine revealed a small right sided herniation at C5-6 but an MRI of the plaintiff's brain was negative. (T. 109-110).

On October 15, 1996, Dr. Parker assessed the plaintiff's seizure disorder as stable. (T. 124).

On November 4, 1997, the plaintiff told Dr. Parker that his back pain was "not too bad." (T. 122).

On May 12, 1998, the plaintiff told Dr. Parker that while at work he had a seizure for the first time in years but that he had been drinking occasionally. (T. 121).

On March 29, 2001, Dr. Saurin Shah, a physician, noted that plaintiff's seizure disorder was controlled by medication and that his back pain was stable. (T. 150).

On July 26, 2001, a Workers' Compensation doctor, Dr. Agarwal saw the plaintiff for lower back and neck pain. (T. 147). The doctor noted a decreased range of motion with some spasm and stiffness in the lower back, and a decreased range of motion with some spasm in the neck. He furthered noted that the plaintiff's

upper extremities had no sensory or motor deficits, and his reflexes were normal. Id. The doctor recommended physical therapy and range of motion exercises, and prescribed Skelaxin. (T. 148).

On May 3, 2002, the plaintiff had a seizure because he missed dosages of his anti-seizure drug Dilantin and he was taken to the emergency room. (T. 151-157). He was treated with Dilantin and Phenobarbital and discharged. (T. 151-52). The plaintiff maintained that he missed the dosages because he could not afford to buy the drug. (T. 155).

On May 24, 2002, Dr. Shah observed that the plaintiff's cranial nerves were intact, his sensation and deep tendon reflexes were normal, and his motor strength was full at 5/5. (T. 144). The doctor assessed him as doing well as a status-post seizure episode. Id.

On January 7, 2003, Dr. Jeffrey Patterson, the plaintiff's treating chiropractor, completed an employability assessment which opined that plaintiff had been unable to work since April 2002. (T. 199). Patterson diagnosed plaintiff with late effect sprain/strain syndrome. Id.

On January 28, 2003, Dr. Jeffrey Kirschman, the plaintiff's treating physician examined the plaintiff. (T. 166). Dr. Kirschman's observed that the plaintiff's neck had a full range of motion with some spasm but no tenderness. Id.  He further noted that the plaintiff's straight leg raising was negative on the

right, the plaintiff had 5/5 motor strength in his lower extremities, and he was able to squat. (T. 166). From this examination, Dr. Kirschman completed an employability assessment diagnosing plaintiff with lumbago, cervicalgia, and a seizure disorder that was controlled by medication, and opined that plaintiff has been unable to work since April 2002. (T. 198).

On February 19, 2003, the plaintiff filed an application for SSI alleging a disability since April 1, 2002, due to a back a neck condition, and a seizure disorder. (T. 66, 275).

On July 21, 2003, after a complete examination, Dr. John Cusick, a consultative physician, diagnosed the plaintiff with low back pain, neck pain, and a seizure disorder. (T. 194). The doctor's prognosis for the plaintiff's musculoskeletal pain was fair and his outlook for the seizure disorder was good. Id. He found that the plaintiff would have only minimal limitations regarding his ability to stand, walk, bend, stoop, lift, and perform repetitive work with his hands and feet. Id.

On July 30, 2003, Dr. Vidyasagar Mokureddy, a pain specialist, diagnosed the plaintiff with status-post injury, low back pain, neck pain, bilateral sacroilitis, and cervical myofascial pain syndrome. (T. 211). He prescribed Tylenol with Codeine and Bextra, and recommended a bilateral sacroiliac joint injection. Id.

On September 19, 2003, Dr. Patterson, the plaintiff's chiropractor, completed another employability assessment in which

he reiterated his assessment and opinion from his January 7, 2003 employability assessment. (T. 197).

On September 24, 2003, an MRI scan of the plaintiff's lumbar spine, revealed disc bulges at L4-5 and L5-S1, an L4-L5 radial annular tear, and L5-S1 disc protrusion. (T. 200).

On November 3, 2003, the plaintiff saw Dr. Mokureddy, at which time he was diagnosed with low back pain, left leg weakness, lumbosacral radiculitis, bilateral sacroilitis, status-post injury, and cervical myofascial pain. (T. 209).

On November 12, 2003, the plaintiff saw Dr. Robert Burke who recommended MRI scans of the brain, cervical spine, and thoracic spine. (T. 248). The MRI scan of plaintiff's brain was unremarkable except for sinusitis, the MRI of plaintiff's cervical spine revealed bulging discs at C4-C5, C5-C6, and C6-C7, and the MRI of plaintiff's thoracic spine was normal. (T. 204-6).

On January 19, 2004, the plaintiff sought a second opinion from another pain management specialist, Dr. Robert Madden. (T. 236). The doctor assessed findings consistent with discogenic disease and nerve root irritation. Id. He recommended steroid injections and physical therapy, both treatments which plaintiff refused to complete. Id.

The plaintiff complained of facial numbness to Dr. Patterson on several dates in February and March 2004. (T. 221, 223). Dr.

Patterson referred plaintiff to Dr. Mulki Bhat, a neurologist. (T. 238).

On May 10, 2004, Dr. Bhat examined the plaintiff and acknowledged that he did "not have the slightest clue as to the exact etiology" of the plaintiff's facial numbness. (T. 238).

B. Non-Medical Evidence

The plaintiff was forty-seven years old at the time of the ALJ's decision. (T. 33) He is a high school graduate. (T. 264-65). Plaintiff was last employed as an auditor in April 2002. Id. He also has been employed as a cashier and a delivery and sales person for a beverage distributor. (T. 269-71).

The plaintiff alleged that he was no longer able to work due to his back pain and seizure disorder. (T. 275). The plaintiff maintained that he has difficulty sleeping at night due to his pain and that most of his day was spent trying to catch up on his sleep. (T. 279). The plaintiff maintained that his day consisted of watching television, lying down, playing guitar for up to thirty minutes at a time, and walking to the grocery store or the library. (T. 280-81, 283, 286). The plaintiff alleged that he could only sit or stand for ten minutes at a time, walk only a couple of blocks at a time, and only lift up to five pounds. (T. 282-83).

Ms. Karen Kane, the impartial vocational expert, testified at the hearing that plaintiff's past relevant work experience consisted of a delivery and sales job and cashier jobs. (T. 288).

She advised that the Dictionary of Occupational Titles classified the plaintiff's delivery and sales job as medium duty semi-skilled work and his cashier jobs as light duty unskilled work. Id. Ms. Kane opined that if the plaintiff were limited to sedentary work, with the additional restrictions of not being exposed to dangerous machinery, not driving automotive equipment, and not working at unprotected heights or with constant vibrations, he could return to his past relevant work as a cashier. (T. 291). However, if the plaintiff's testimony were completely accepted, then he would not be able to return to any of his past relevant work. Id.

## LEGAL STANDARD

A. Jurisdiction and Scope of Review-

42 U.S.C. § 405(g), grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering a claim, the Court must accept the findings of fact made by the Commissioner provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).

Under this standard, the court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

B. <u>Standard for Eligibility for Supplemental Security Income</u>-

In order to establish a disability under the Act, the plaintiff has the burden of demonstrating (1) that he was unable to engage in substantial activity by reason of a physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such an impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. 42 U.S.C. § 1382c (a)(3); see also <u>Barnhart v. Walton</u>, 535 U.S. 212, 215 (2002). Furthermore, eligibility for Supplemental Security Income based upon disability is conditioned upon compliance with the income and resource requirements of 42 U.S.C.§§ 1382a and 1382b.

In evaluating disability claims, the Commissioner instructs adjudicators to follow the five step process promulgated in 20 C.F.R. § 416.920.  First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work.  Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission.  If it does, then no further inquiry is made as to age, education or experience and the

claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work. If he is not, the fifth and final inquiry is whether the claimant can perform any other work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## DISCUSSION

Here, the ALJ properly followed the five step procedure. The ALJ found that plaintiff: (1) had not engaged in substantial gainful employment at any time since his alleged disability onset date of April 1, 2002; (2) suffered from a seizure disorder and a musculoskeletal condition which constituted a severe impairment; (3) did not have an impairment listed in Appendix 1, Subpart P, Regulation No. 4 of the Social Security Regulations; and (4) has the residual functional capacity to perform light and sedentary work activity, as defined at the hearing, which does not expose him to dangerous machinery, driving automotive equipment, constant vibration or working at unprotected heights but work that is similar in nature to his previous work as a cashier. (T. 19). The Commissioner contends that because there is substantial evidence in the record to support the ALJ's determination that the plaintiff is

not disabled, her motion for judgment on the pleadings should be granted.

The plaintiff argues that when Judge Bede evaluated his ability to perform relevant past work as a cashier, he failed 1) to afford appropriate weight to the opinions of the claimants' treating sources; 2) to properly assess the claimant's credibility; and; 3) substituted his own medical "opinion" for that of the physicians of the record.

This Court finds that there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled. Moreover, this Court disagrees with the plaintiff's assessment that Judge Bede failed to properly evaluate the plaintiff's ability to perform relevant past work as a cashier by failing to afford appropriate weight to the opinions of the claimant's treating sources, properly assessing the claimant's credibility, and substituting his own "medical" opinion for that of the physicians on record.

The ALJ did evaluate the opinions of the plaintiff's treating physicians, Dr. Patterson and Dr. Kirschman, who stated that the plaintiff was not capable of performing work in any capacity since April 2002. However, the ALJ rejected these opinions because they were not supported by the weight of credible contrary evidence in the record. See 20 C.F.R. 416.927(d)(4)(the less consistent an opinion is with the record as a whole, the less weight it will be

given), cited in Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). Here, Dr. Patterson and Dr. Kirschmans' opinions are not consistent with the record as a whole. In evaluating the plaintiff's alleged conditions, the ALJ did consider the treating physicians opinions, but he found that these opinions were not supported by or consistent with the evidence in the record. Dr. Cusick assessed minimal limitations (T. 194), Dr. Shah's physical examination was unremarkable (T. 144), Dr. Mokureddy observed full motor strength (T. 255), and Dr. Madden assessed that the plaintiff's lower extremities had no motor deficits and his gait was normal (T. 235). Furthermore, Dr. Cusick, Dr. Mokureddy, Dr. Agarwal, Dr. Madden, and Dr. Shah each had similar findings regarding the plaintiff's strength and gait. (T. 144, 147, 235, 255). The plaintiff's MRI scan of his thoracic spine and brain were unremarkable. Moreover, the plaintiff's seizure disorder was controlled by avoidance of alcohol and taking prescription drugs. (T. 150, 167).

The ALJ also reasonably concluded that the plaintiff's testimony regarding his limitations was not credible. It is well within the discretion of the adjudicator to evaluate the credibility of the plaintiff's testimony and render an independent judgment in light of the medical and other evidence regarding the true extent of such symptomology. Mimms v. Secretary of Health and Human Services, 750 F.2d 180, 186 (2d Cir. 1984). Here, the plaintiff testified to engaging in fairly normal activities of

daily living. He testified that he watched television, played his guitar and walked to the grocery store or library. (T. 280-281, 283, 286). Dr. Cusik noted that the plaintiff's daily activities consisted of cooking, cleaning, laundry, shopping, showering, and dressing himself. (T. 191-92). Thus, the ALJ reasonably concluded that the objective evidence of the record did not substantiate the plaintiff's claim of disability to the extent he alleged.

Finally, the ALJ did not substitute his own medical "opinion" for that of the physicians in the record. He based his decision on several doctors' opinions and the testimony of the vocational expert who concluded that the plaintiff if limited to sedentary work, with the additional restrictions of not being exposed to dangerous machinery, not driving automotive equipment, and not working at unprotected heights or with constant vibrations, could return to his past relevant work as a cashier. Thus, I find that the ALJ properly evaluated the plaintiff's ability to perform relevant past work as a cashier.

Therefore, I find that the ALJ's conclusion is supported by substantial evidence in the record and that the record, read as a whole, presents sufficient evidence to support the conclusions reached by ALJ Bede.

## CONCLUSION

For the reasons set forth above, I find substantial evidence in the record to support the ALJ's conclusion that the plaintiff is

Case 6:05-cv-06007-MAT   Document 10   Filed 04/20/06   Page 15 of 15

not eligible for SSI.  Accordingly, the decision of the Commissioner denying the plaintiff's claim is affirmed, the defendant's motion for judgment on the pleadings is granted.

ALL OF THE ABOVE IS SO ORDERED.

```
                        S/Michael    A.    Telesca
                        _____
                           MICHAEL A. TELESCA
                           United States District Judge
```

DATED:    Rochester, New York
          April 20, 2006

15